# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **VEDA M. ODLE,** ) | |
| Plaintiff ) | Civil Action No.: 1:17cv00018 |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **UMWA 1974 PENSION PLAN,** ) | |
| **et al.,** ) | |
| Defendants, ) | |

The plaintiff, Veda M. Odle, ("Odle"), a union coal miner's widow, has filed this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq., ("ERISA"), challenging the amount awarded to her in a 1974 Pre-Retirement Survivors Annuity by the United Mine Workers of America, ("UMWA"), 1974 Pension Plan, ("Plan"). This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) to render a report and recommended finding. A hearing was held before the undersigned on November 29, 2017.

*I. Facts*

In her Complaint, Odle alleges that her late husband, Raymond L. Odle, Jr., ("Raymond Odle"), was a long-time coal miner and a Plan participant. She alleges that her husband worked for various signatory bituminous coal companies in both classified, or union, jobs and nonclassified, or nonunion, jobs prior to his death in March 2010. The classified jobs entitled Odle's husband to "credited service," which was used under the Plan to calculate Odle's survivor annuity. The Plan

awarded Odle a survivor's annuity with a benefit amount based on 15.25, and, later, 15.50, years of classified signatory service.

Article IV.A(1) of the 1974 Pension Plan states:

> … A participant shall receive credit for a year of service for any calendar year in which he worked, subsequent to December 31, 1936, as an employee in a job classified in the then existing bituminous coal wage agreement for an employer in the coal industry for at least 1,000 hours of service, with credit given for the next lowest ¼ year in the event any employee works less than 1,000 hours of service as follows:
> 750-999 hours,   ¾ year
> 500-749 hours,   ½ year
> 250-499 hours,   ¼ year
> 249 hours of less,  0.

(Administrative Record, ("R."), (Docket Item No. 12), at 138.)

The record in this case includes wage and employment records from the Social Security Administration, Consol Energy, Gone Under Coal Company and Dale Coal Company, Inc.

The Social Security records show that Raymond Odle received the following wages from the following employers for the following years:

| Year | Employer | Wages |
|---|---|---|
| 1977 | Fossil Fuel Development Corporation | $14,520.63 |
| 1978 | Fossil Fuel Development Corporation | $9,385.84 |
| 1979 | Fossil Fuel Development Corporation | $19,294.94 |
| 1980 | Fossil Fuel Development Corporation | $10,834.85 |
| 1980 | G and A Coal Company, Inc. | $2,512.51 |
| 1981 | G and A Coal Company, Inc. | $20,232.35 |

| | | |
|---|---|---:|
| 1982 | Extractors, Inc. | $7,642.52 |
| 1982 | G and A Coal Company, Inc. | $15,701.26 |
| 1983 | Extractors, Inc. | $16,870.55 |
| 1983 | Gone Under Coal Company | $9,893.12 |
| 1984 | Extractors, Inc. | $219.44 |
| 1984 | Gone Under Coal Company | $11,378.14 |
| 1984 | Riteway Coal, Inc. | $7,357.71 |
| 1985 | Liberty Bell Fuel Company | $25,633.38 |
| 1986 | Liberty Bell Fuel Company | $27,244.17 |
| 1987 | Liberty Bell Fuel Company | $11,834.50 |
| 1987 | Peach Tree Coal, Inc. | $21,006.96 |
| 1988 | Liberty Bell Fuel Company | $17,039.17 |
| 1988 | Peach Tree Coal, Inc. | $8,440.18 |
| 1988 | Dale Coal, Inc. | $5,656.25 |
| 1989 | Dale Coal, Inc. | $40,206.25 |
| 1990 | Dale Coal, Inc. | $43,698.75 |
| 1991 | Dale Coal, Inc. | $42,380.00 |
| 1992 | Dale Coal, Inc. | $38,967.50 |
| 1993 | Dale Coal, Inc. | $40,040.00 |
| 1994 | Dale Coal, Inc. | $33,390.20 |
| 1995 | Dale Coal, Inc. | $38,273.44 |
| 1995 | KC Mining, Inc. | $6,680.70 |
| 1995 | Chief Mining, Inc. | $1,194.38 |
| 1996 | Brock Mining, Inc. | $44,356.00 |
| 1996 | KC Mining, Inc. | $3,481.56 |
| 1996 | Chief Mining, Inc. | $1,712.34 |
| 1996 | RCO Enterprises, Inc. | $3,790.00 |

| | | |
|---|---|---|
| 1997 | Rhino Mining, Inc. | $64,116.70 |
| 1998 | Rhino Mining, Inc. | $48,405.00 |
| 1999 | Rhino Mining, Inc. | $71,900.00 |
| 2000 | Chief Mining, Inc. | $6,721.26 |
| 2001 | Chief Mining, Inc. | $48,117.59 |

(R. at 6, 20-21, 31-37.)

Consol Energy reported that Raymond Odle worked for it as a general laborer/roof bolter at the Itmann #1 mine from August 13, 1973, to June 11, 1976. (R. at 10.) Time cards from Gone Under Coal show that Raymond Odle worked as a union employee for biweekly pay periods ending February 12, 1984, March 11, 1984, and April 8, 1984. The cards also show that he was assessed union dues for these periods. (R. at 28-30.)

The record also reflects that the Fund reviewed the audit work papers of Dale Coal, Inc., for the period from August 1, 1988, to October 31, 1994. The audit work papers confirmed that Raymond Odle worked for Dale Coal, Inc., during this period. The audit work papers showed that Raymond Odle worked 342.75 hours in 1988 and 58.75 hours in 1989 in classified jobs for Dale Coal, Inc. (R. at 96.) They also show that Raymond Odle was listed as a salaried employee. (R. at 99.) These papers also include a number of Foreman's Daily Report forms from 1989-93 on which Raymond Odle was listed as a foreman. (R. at 100-07.) One of these forms, however, does show that Raymond Odle was listed as a roof bolter, but the date on this form is not legible. (R. at 108.) Other papers note that Raymond Odle was listed as performing roof bolter duties in 1988 and 1989. (R. at

111-13.) Other papers note that Raymond Odle was paid a salary and did not pay union dues. (R. at 114-15.)

Based on these records, the Plan originally awarded Raymond Odle 15.25 years of creditable service. (R. at 15-16, 24-25.) The Plan awarded Raymond Odle .75 year of creditable service for 1973, 1978 and 1984. It awarded him 1.0 year of creditable service for each year from 1974 to 1977, 1979 to 1983 and 1985 to 1988. The Plan did not award Raymond Odle any creditable service for the years from 1989 to 2002 because it determined that his work during this period was performed for nonsignatory employers. (R. at 16.)

Odle filed a Request for Hearing with the Plan on or about September 27, 2010, to contest the years of creditable service awarded. (R. at 18.) A hearing was held on March 30, 2011, and a decision issued January 23, 2012. (R. at 59-64.) The January 23, 2012, decision awarded Odle 15.5 years of creditable service. In particular, Odle received an additional creditable .25 year of creditable service for the year 1984. (R. at 61, 64.) The Plan also determined that Raymond Odle performed some classified work for Dale Coal, Inc., in 1988, but it could not award him any additional creditable service for this work because it previously had awarded him a full year of creditable service for the 1988 calendar year. (R. at 64.) The Plan determined that, after February 1989, Odle performed only nonclassified work for Dale Coal for which he was paid a salary with no union dues deducted. (R. at 60, 62-63.) The Plan also determined that the evidence was insufficient to establish that any work performed by Raymond Odle for K&J Mining, Inc., in 1994 was in a classified position because no classified hours were reported to the union, and no union dues were withheld. (R. at 64.) The Plan further determined

that Raymond Odle's coal mine work in 1995 and 1996 was for nonsignatory employers. (R. at 64.)

Odle requested the Plan reconsider this decision, and, in August 2014, she produced several co-workers of her late husband who provided information used to complete Co-Worker's Confirmation of Pension Applicant's Work History forms. One of these forms was completed with information provided by Robert Hatfield who stated that he worked with Raymond Odle from 1989-92 at Dale Coal and in 1994 at K&J Mining. At both these companies, Hatfield stated that Raymond Odle was the miner operator. Hatfield also stated that, in 1995, he worked with Raymond Odle at Chief, a nonunion mine. (R. at 79-80.) Sherrill Kershner also provided information used to complete one of these forms. Sherrill Kershner stated that Raymond Odle worked as the miner operator at Dale Coal from 1988-94, at K&J Mining from 1994-95 and at K&C Mining from 1995-96. Sherrill Kershner stated that Raymond Odle worked as the evening shift foreman at Chief from 2000-02. (R. at 81-82.) Tommy Rose also provided information used to complete a form. Rose stated that Odle worked as a miner operator at K&J Mining from July 1994 to October 1995 and as a miner operator and roof bolter at Chief Mining from October 1995 to February 1996. (R. at 83-84.) Steven Kershner also provided information used to complete a form, stating that Raymond Odle worked as a miner operator and a general laborer at K&J Mining from 1994 to October 1995, as a miner, scoop and shuttle operator at Chief Mining from October 1995 to February 1996 and as a foreman and a general laborer at Rhino from April 1999 to February 2000. (R. at 85-86.)

*II. Analysis*

The decisions of the trustees of employee pension plans are reviewed by the courts de novo unless the benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The 1974 Pension Plan grants the trustees such discretion. *See* 1974 Pension Plan Art. XII, R. at 243; *see also*, *Boyd v. Trs. of the UMW Health & Ret. Funds*, 873 F.2d 57, 59 (4th Cir. 1989). Where a plan grants the trustees such discretion, the trustees' decision should be reviewed under an abuse of discretion standard, and "will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). The Fourth Circuit Court of Appeals in *Booth* identified eight nonexclusive factors for courts to consider in determining whether a plan administrator had abused its discretion. *See* 201 F.3d at 342-43. These factors are:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43.

Odle argues that the defendants abused their discretion by refusing to award Raymond Odle any creditable service for his coal mine work from 1989 to 2002. In particular, Odle argues that the Plan's decision is not based on substantial evidence, arbitrarily rejected the co-workers' statements and treated the issue of payment of inactive dues inconsistently. The Plan argues that it did not abuse its discretion in its determination of the years of creditable service to award Raymond Odle.

Based on my review of the evidence before the court, I find that the Plan has abused its discretion in finding that Odle's survivor's annuity should be based upon only 15.5 years of creditable service by Raymond Odle. In particular, I find that the decision was not consistent with the procedural and substantive requirements of ERISA. ERISA requires that any plan participant whose claim for benefits has been denied be given a "reasonable opportunity … for a full and fair review" of the decision. 29 U.S.C.A. § 1133(2) (West 2009). Further, the regulations governing the review of adverse employee benefits determinations state:

> … [T]he claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures –
> … Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

29 C.F.R. § 2560.503-1(h)(2)(iii) (2016); *See also Gagliano v. Reliance Standard Life Insurance Co.*, 547 F.3d 230, 235 (4th Cir. 2008). The regulations also define

"relevant" information to include any "document, record, or other information … relied upon in making the benefit determination…." 29 C.F.R. § 2560.503-1(m)(8)(i) (2016). Furthermore, the Fourth Circuit Court of Appeals has held that "[t]hese procedural guidelines are at the foundation of ERISA." *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 15, 157 (4th Cir. 1993).

The Summary Of Pre-Hearing Conference contained in the record shows that the Plan relied upon the records of the Plan's audit of Dale Coal for the period of August 1, 1988, to October 31, 1994. In fact, this Summary cites the timesheet records from Dale Coal showing that Raymond Odle was working as a foreman and was paid a salary with no union dues deducted as support for the Plan's decision not to award any creditable service for his work during this period. (R. at 24.) The Plan, in its Memorandum In Support Of Defendants' Motion For Summary Judgment And In Opposition To Plaintiff's Motion For Summary Judgment, ("Defendants' Brief") (Docket Item No. 19 at 5, 6-7, 14-15)), admits that it relied on these records to deny an award of any creditable to Raymond Odle during this period.

Odle, through her counsel, asserts that she requested these audit records be provided to her prior to her March 30, 2011, hearing, but the Plan refused to provide them to her. (Plaintiff's Memorandum In Support Of Summary Judgment, ("Plaintiff's Brief") (Docket Item No. 18 at 10)). The Defendants' Brief concedes that these audit records were not provided to Odle during her appeal process under the Plan. (Defendants' Brief at 22.)

Based on this record, and, in particular, based on the Plan's failure to provide Odle with a copy of all of the records on which it was relying to deny her

request for additional credited service for her late husband, I cannot find that Odle was provided a full and fair review as required by ERISA. Therefore, I will recommend that Odle's claim be remanded to the Plan for further consideration.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  The Plan failed to provide Odle an opportunity for a full and fair review of its decision basing her survivor's annuity on only 15.5 years of credited service by Raymond Odle; and
2.  The Plan abused its discretion in its determination that Odle's survivor's annuity should be based on only 15.5 years of credited service by Raymond Odle.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the parties' cross-motions for summary judgment and remand Odle's claim for a survivor's annuity to the Plan for further consideration.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written

objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: December 11, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE